UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WILLIAM HENDERSON,** <br> **4609 HAZLEWOOD AVE.** <br> **BALTIMORE, MD 21206** <br><br> **PLAINTIFF,** <br><br> v. <br><br> **MARYLAND TRANSIT** <br> **ADMINISTRATION** <br> **6 ST. PAUL PLACE** <br> **BALTIMORE, MD** <br><br> **SERVE: ANTHONY BROWN** <br> **ATTORNEY GENERAL** <br> **200 ST PAUL PLACE** <br> **BALTIMORE, MD 21202** <br><br> **AND** <br><br> **MARYLAND DEPARTMENT OF** <br> **TRANSPORTATION** <br> **7201 CORPORATE CENTER DRIVE** <br> **HANOVER, MD 21076** <br><br> **SERVE: ANTHONY BROWN** <br> **ATTORNEY GENERAL** <br> **200 ST PAUL PLACE** <br> **BALTIMORE, MD 21202** <br><br> **AND** <br><br> **STATE OF MARYLAND** <br> **100 STATE CIRCLE** <br> **ANNAPOLIS, MD 21401** <br><br> **SERVE: ANTHONY BROWN** <br> **ATTORNEY GENERAL** <br> **200 ST PAUL PLACE** <br> **BALTIMORE, MD 21202,** <br><br> **DEFENDANT.** | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | <br><br><br><br><br><br> **Case No.:** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

William Henderson (hereinafter referred to as "Mr. Henderson" or "Plaintiff"), by and through his counsel, Charles Tucker, Jr. Esq. and the Cochran Firm Hyattsville, and brings this Complaint against the Defendants, and states as follows:

## PARTIES/JURISDICTION/VENUE

1. The Plaintiff is an adult resident, domiciled in the State of Maryland.

2. The Defendant, MARYLAND TRANSIT ADMINISTRATION ("MTA") is a state-operated transit administration in the State of Maryland that has its headquarters at 6 St. Paul Street, 20th Fl., Baltimore, Maryland 21202.

3. The MTA is a division of the Defendant Maryland Department of Transportation ("MDOT"), both of which are departments of the Defendant, State of Maryland that receive federal financial assistance.

4. The MTA is a division of MDOT and a department of the State of Maryland, therefore MDOT and the State of Maryland are vicariously liable for the actions or omissions of MTA and claims set forth in this Complaint.

5. Additionally, venue in this case would be proper in the Maryland District Court because the events took place within the boundaries of the court's jurisdiction.

6. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race, age, and retaliation and all conditions precedent necessary to file this lawsuit have been performed. The EEOC issued a Right to Sue letter on February 14, 2023.

**STATEMENT OF FACTS**

7. Plaintiff, Mr. Henderson is a 70-year old African American male who has been an employee of MTA for many years.

8. On July 2, 2021, Mr. Henderson received a notice to take a physical.

9. Mr. Henderson asked his supervisor, Kent Bell ("Kent") who is a younger Caucasian male, for the form to fill out for the physical, but Kent told him he "didn't know what he was talking about." So, Mr. Henderson, went to Reed Bear to get the form.

10. When Kent found out Mr. Henderson went to another supervisor, he became angry at Mr. Henderson. Kent then went back to Mr. Henderson and began arguing with him.

11. Mr. Henderson reported this incident the Mr. Rogers.

12. A few weeks later Mr. Henderson had to take the Rail Worker Protection Test, which is an annual required test.

13. Mr. Henderson went into the office to get the book to follow along with the online course, however, at that time, maintenance was waxing the floors in the office.

14. Mr. Henderson waited until the floors were drying from the waxing before going back to the office to get the book he needed.

15. When Mr. Henderson returned to the office to get the book for the test, Kent was in the office and told him to "get out" the office, requiring Mr. Henderson to leave without getting the required book.

16. Mr. Henderson went to the Director, Cynthia Lewis, to complain about Kent's conduct.

17.     Mr. Henderson also inquired as to what happened with his last complaint about Kent. Cynthia told Mr. Henderson the issue was addressed, and that she is "not required to tell" Mr. Henderson the detailed outcome of his complaint.

18.     Another incident with Kent occurred and Mr. Henderson went into the office to talk to his supervisor Darlene about it.

19.     While in the office talking to the supervisor Kent got mad that Mr. Henderson was in the office and told him to "get out".

20.     Additionally, Kent then began to force Mr. Henderson to start doing duties outside his normal position, specifically, duties assigned to the first shift. Mr. Henderson reported this to his supervisor, as well and reported that he felt targeted against and bullied.

21.     On or about October 10, 2021, Mr. Henderson then filed an EEOC claim because of Kent's behavior and actions towards him.

22.     Kent continued to scream at Mr. Henderson at work for random reasons for several months and did not scream at any of the other employees.

23.     Following and during the timeframe of the EEOC investigation, Kent then also began to require Mr. Henderson to do assignments he and his team were not trained to do, for example a slew ring process on the C-trucks.

24.     Kent, again, screamed at Mr. Henderson on multiple occasions, and did not scream at any of the other employees.

25.     In or around August 2022, Mr. Henderson was then abruptly and without explanation handed a paper to change his schedule and begin to report to the first shift a few days later.

26. Mr. Henderson explained this was not enough notice and he would be unable to adjust his schedule this quickly because he cares for his great grandson, so he missed the initial start day to begin on the first shift.

27. When Mr. Henderson moved to the first shift, he became made aware that he was supposed to be getting trained. The trainer did not know he was coming to work the shift.

28. Mr. Henderson complained about moving shifts and explained he has already completed the training, however, and he was told "if [he] did not like what was happening [he] could leave."

29. On or about August 31, 2022, Mr. Henderson missed work due to carbon monoxide poisoning and he was then "written up" for not showing up for his shift. So, Mr. Henderson went to work. Then, while working, Mr. Henderson passed out.

30. When at the hospital, carbon monoxide was found in Mr. Henderson's brain.

31. Mr. Henderson was not cleared by the hospital or his physicians to work or return to work at that time, and when he informed Kent of this, Kent said he did not believe Mr. Henderson.

32. Mr. Henderson has still not been cleared to return to work. He has had to have surgeries which he has not recovered from yet.

33. Mr. Henderson still experiences stress from Kent's conduct.

34. On November 7, 2022, Mr. Henderson filed Charges with h EEOC for retaliation and discrimination on the basis of race and age.

**CLAIMS FOR RELIEF**

**COUNT I**
**RACE DISCRIMIANTION**

35. Plaintiff reasserts and re-alleges each every allegation set forth in this Complaint as though fully set forth herein.

36. Defendants have engaged in intentional racial discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, treating Plaintiff differently than his co-workers because he is an African American.

37. Defendants' differential treatment of Plaintiff based on race has created a racially hostile environment that has adversely affected Plaintiff's employment.

38. The Plaintiff experienced a hostile work environment based on a culmination of incidents, which caused Plaintiff unable to properly perform his job duties.

39. Defendant's racial discrimination included, but was not limited to, the following:

   A. Subjecting Plaintiff to less favorable treatment than his white similarly situated co-workers;

   B. Refusing to provide Plaintiff with the form necessary for his mandatory physical;

   C. Preventing Plaintiff from obtaining the materials and Rail Worker Protection book to take a mandated test but allowing his white similarly situated co-workers to obtain the materials;

   D. Forcing Plaintiff to leave the office whenever Kent wanted him to by screaming at him to "get out", and never doing the same to any other similarly situated white co worker;

    E.    Changing Plaintiff's schedule without warning or notice and not doing the same to any other similarly situated white co worker;

    F.    Screaming at Plaintiff in an extremely aggressive and hostile manner, and not screaming at his white co-workers;

    G.    Forcing Plaintiff to complete duties outside his normal position, specifically, duties assigned to the first shift, while not requiring the same for his white similarly situated co-workers;

    H.    Failing to provide the proper training to Plaintiff but then assigning him to tasks his team was unable to complete because they did not receive the new training to do the slew ring process on the c-trucks

    I.    Subjecting Plaintiff to reprimand and write ups for issues his white similarly situated co-workers were not written up for or reprimanded about;

    J.    Failing to take Plaintiff's reports of harassment and bullying seriously and failing to investigate his concerns;

    K.    Forcing Plaintiff to work despite knowing and/or being made aware he was exposed to carbon monoxide poisoning.

    L.    Forcing Plaintiff to work knowing his health was poor and causing Plaintiff to pass out while at work.

40. The racially hostile environment is so severe, pervasive, and objectively offensive that it drastically undermines Plaintiff's career and effectively deprives him of equal opportunities.

41. The creation of such a racially hostile environment is the responsibility of Defendants because it is directly created by Defendant's employees and policies.

42. As a proximate result of Defendant's unlawful racial discrimination, as set forth above, Plaintiff has suffered, and continues to suffer substantial monetary damages, physical personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to his detriment, in an amount to be shown according to proof.

43. Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable, and any other relief the Court deems just and proper.

## COUNT II
## AGE DISCRIMINATION

44. Plaintiff reasserts and re-alleges each every allegation set forth in this Complaint as though fully set forth herein.

45. Defendants have engaged in intentional age discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, treating Plaintiff differently than his co-workers because he is the oldest worker, and older than all of his co-workers and supervisors.

46. Defendants' differential treatment of Plaintiff based on age has created an offensive and hostile environment that has adversely affected Plaintiff's employment.

47. Defendant's age discrimination included, but was not limited to, the following:

    A.    Subjecting Plaintiff to less favorable treatment than his younger similarly situated co-workers;

    B.    Refusing to provide Plaintiff with the form necessary for his mandatory physical;

    C.    Targeting Plaintiff because he is the oldest worker;

    D.    Singling out Plaintiff because of his age and screaming at him, while not screaming at his younger co-workers;

E. Preventing Plaintiff from obtaining the materials and Rail Worker Protection book to take a mandated test but allowing his younger similarly situated co-workers to obtain the materials;

F. Forcing Plaintiff to leave the office whenever Kent wanted him to by screaming at him to "get out", and never doing the same to any other younger co worker;

G. Changing Plaintiff's schedule without warning or notice, knowing he has a Great Grandson to care for, and never doing the same to any other younger co worker;

H. Forcing Plaintiff to complete duties outside his normal position, specifically, duties assigned to the first shift, while not requiring the same for his younger similarly situated co-workers;

I. Failing to provide the proper training to Plaintiff but then assigning him to tasks his team was unable to complete because they did not receive the new training to do the slew ring process on the c-trucks;

J. Subjecting Plaintiff to reprimand and write ups for issues his younger co-workers were not written up for or reprimanded about;

K. Failing to take Plaintiff's reports of harassment and bullying seriously and failing to investigate his concerns;

L. Forcing Plaintiff to work despite knowing and/or being made aware he was exposed to carbon monoxide poisoning; and

M. Forcing Plaintiff to work knowing his health was poor and causing Plaintiff to pass out while at work.

48. The offensive and hostile environment is so severe, pervasive, and objectively offensive that it drastically undermines Plaintiff's career and effectively deprives him of equal opportunities.

49. The creation of such a offensive and hostile environment is the responsibility of Defendants because it is directly created by Defendant's employees and policies.

50. As a proximate result of Defendant's unlawful age discrimination, as set forth above, Plaintiff has suffered, and continues to suffer substantial monetary damages, physical personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to his detriment, in an amount to be shown according to proof.

51. Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable, and any other relief the Court deems just and proper.

## COUNT III
## RETALIATION

52. Plaintiff repeats and realleges each and every allegation in the paragraphs above as though fully set forth at length herein.

53. On many occasions, Plaintiff reported unlawful, harassing, discriminatory and racist behaviors multiple times to supervisors as outlined above, as well as when he filed charges with the EEOC in October 2021 when he was being treated unfairly by his supervisors.

54. As a result of Plaintiff's reports, complaints, and protected activities Defendant, through its agents, servants and/or employees, retaliated against Plaintiff by reprimanding him, screaming at him, assigning him additional tasks, refusing to provide materials and books for the mandated test, refused to provide proper training and assigning tasks his team was not trained for, changing his schedule without notice, yelling at him to "get out" on multiple occasions, writing him up after he reports being unable to work due to being exposed to carbon monoxide, forces him

to work while poisoned by carbon monoxide and causing him to suffer a fall and injury while at work.

55. Plaintiff was never subjected discipline in all the years working for the Defendant until he began reporting the offensive, harassing, racist and discriminatory actions of his younger white supervisor, Kent.

56. By retaliating against Plaintiff for complaining about and opposing unlawful harassment and discrimination, Defendant violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e2).

57. As a proximate result of Defendant's unlawful retaliation, as set forth above, Plaintiff has suffered, and continues to suffer substantial monetary damages, physical personal injuries, embarrassment, humiliation, mental anguish and other general damages, all to his detriment, in an amount to be shown according to proof.

58. Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable, and any other relief the Court deems just and proper.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. Plaintiff reasserts and re-alleges each every allegation set forth in this Complaint as though fully set forth herein.

60. Continuously and on multiple occasions, as listed throughout this Complaint, while at work Defendant subjected Plaintiff to unwelcome discrimination and harassment because of his age and race and then subjected him to retaliation for reporting and complaining about this unlawful treatment.

61. Plaintiff made several complaints to management, however, management allowed the unlawful acts listed above to continue regularly.

62. At no time did Plaintiff consent to any of the acts alleged herein by Defendant's employee/agents.

63. Defendants continued to employee Kent and allow him to continuously harass Plaintiff.

64. Defendant refused and failed to take appropriate disciplinary actions against Kent, who they knew or should have known, was offensive, unsuitable for the position and was causing Plaintiff harm.

65. As a direct and proximate result of Defendant's unlawful retaliation and discriminatory conduct, Plaintiff has suffered and continues to suffer physical personal injuries, embarrassment, humiliation, loss of sleep, fear, mental anguish and other general damages, all to his detriment, in an amount to be shown according to proof.

66. Plaintiff demands judgment against Defendant, a trial by jury on all issues so triable, and any other relief the Court deems just and proper.

## DAMAGES

67. As a consequence of the forgoing misconduct of Defendant, Plaintiff sustained economic damages, pain and suffering, great mental stress, depression, insomnia, shock, and humiliation, attorneys fees, among many other damages to be identified and calculated in an amount to be shown according to proof.

68. As a consequence of the forgoing conduct of Defendant, Plaintiff has damages in an amount over $400,000.00 and exceeding the jurisdictional requirements of the Court.

**RELIEF AND JURY DEMAND**

69. Plaintiff hereby demands a trial by jury on all claims set forth in this Complaint.

70. Plaintiff requests that the Court issue the following relief:

   A. Enter declaratory relief declaring that Defendant have engaged in age and race discrimination, harassment, hostile work environment, retaliation, and intentional infliction of emotional distress;
   B. Award Plaintiff compensatory and punitive damages for all the mentioned causes of action in an amount to be determined by a jury of his peers;
   C. Award Plaintiff attorney's fees, cost and expenses of litigation; and
   D. Award such other relief to which Plaintiff may be entitled to under law.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Defendant in an amount exceeding the jurisdictional requirements of this Court, all together with Court costs, including attorney's fees and costs, plus pre and post judgment interest, and for any other reliefwhich this Court deems just and proper.

**I DO HEREBY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.**

*/s/William Henderson*
**WILLIAM HENDERSON**

DATE: May 12, 2023

Respectfully submitted by:

*/s/Charles Tucker, Jr.*
Charles Tucker, Jr., Esq.
CPF: 0808260001
The Cochran Firm Hyattsville
8181 Professional Pl. Suite 207
Hyattsville, MD 20785
E-mail: charles@tuckerlawgroupllp.com
Tel.: (301) 577-1175
Fax: (240) 467-5787
*Counsel for Plaintiff*