IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM HENDERSON,

           Plaintiff,

    v.

MARYLAND TRANSIT
ADMINISTRATION, *et al.*

           Defendants.

Civil No. 1:23-cv-01267-JRR

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendants Maryland Transit Administration ("MTA"), Maryland Department of Transportation ("MDOT"), and the State of Maryland's (collectively, "Defendants") Motion to Dismiss.  (ECF No. 18; the "Motion.")  The parties' submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2023).

## I.   <u>BACKGROUND</u>[1]

Plaintiff William Henderson filed this action alleging Defendants discriminated and retaliated against him during his employment at MTA in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* and the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA").  (ECF No. 1.)  Plaintiff alleges that MDOT and the State of Maryland are vicariously liable for the actions of MTA because MTA is a division of MDOT and a Department of the State of Maryland.  (ECF No. 1 ¶ 4.)

Plaintiff is a 70-year-old African American male who has been working at MTA for many years.  (ECF No. 1 ¶ 7.)  Kent Bell, a younger Caucasian male, is Plaintiff's supervisor at MTA.

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint.  (ECF No. 1.)

*Id.* ¶ 9.  Between July and October 2021, Bell got angry with Plaintiff on several occasions.  *Id.* ¶¶ 9-20.   On or about October 10, 2021, Plaintiff filed a complaint with the Office of Equal Opportunity Compliance Programs ("OEOCP"),[2] an entity within MTA, because of Bell's behavior and actions towards him.  *Id.* ¶ 21.  Following Plaintiff's EEOC complaint, Bell continued to scream at him and required him to do assignments he was not trained to do.  *Id.* ¶¶ 23-24.

In or around August 2022, Plaintiff was notified that he needed to change his work schedule to report to the first shift.  (ECF No. 1 ¶ 25.)  On or about August 31, 2022, Plaintiff missed work due to carbon monoxide poisoning and was written up for not showing up.  *Id.* ¶ 29.  Plaintiff informed Bell that he was not cleared to work (or return to work at all), but Bell said he did not believe Plaintiff that he was not cleared to work.  *Id.* ¶ 31.  As of the filing of the Complaint, Plaintiff was not cleared to return to work and had undergone surgical procedures from which he had not fully recovered.[3]  *Id.* ¶ 32.  Plaintiff continues to experience stress from Bell's conduct.  (ECF No. 1 ¶ 33.)  On or about November 7, 2022, Plaintiff filed charges with the EEOC for retaliation and discrimination on the basis of race and age.  *Id.* ¶ 34.  Plaintiff alleges that he received a Right to Sue letter on February 14, 2023.  *Id.* ¶ 6.

On July 5, 2023, Plaintiff filed a Complaint against Defendants.  (ECF No. 1 ¶ 1.)  The Complaint sets forth four counts: (I) Race Discrimination in violation of Title VII; (II) Age Discrimination in violation of the ADEA; (III) Retaliation in violation of Title VII; and (IV) Intentional Infliction of Emotional Distress ("IIED").  (ECF No. 1 at 6-12.)  Plaintiff seeks: (i) declaration that Defendants engaged in age and race discrimination, harassment, hostile work environment, retaliation, and intentional infliction of emotional distress; (ii) compensatory

---

[2] In the Complaint, Plaintiff alleges that he filed an EEOC claim on October 10, 2021.  (ECF No. 1 ¶ 21.)  In his Response, Plaintiff clarifies that he filed a claim with the OEOCP, not the EEOC.  (ECF No. 23 at 5.)

[3] The Complaint does not allege that Plaintiff's surgeries are related to his carbon monoxide poisoning and does not otherwise make clear how his alleged surgeries bear upon his employment-related claims, if at all..

damages; (iii) punitive damages; (iv) attorney's fees and expenses; and (iv) any other relief the court deems just and proper. *Id.* at 13.

Defendants move to dismiss the Complaint for various reasons: (1) Plaintiff's ADEA and IIED claims are barred by sovereign immunity; (2) Plaintiff failed to exhaust his administrative remedies; (3) the Title VII and ADEA claims are untimely; (4) Defendants MDOT and the State were not Plaintiff's employer; and (4) as to all counts, Plaintiff fails to state a claim.  (ECF No. 18-1 at 6-28.)

## II.   LEGAL STANDARDS

### Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019).  Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.*  A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.*  A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")).  "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

Defendants raise a facial challenge to the court's subject matter jurisdiction, asserting that the doctrine of sovereign immunity bars Counts II and IV.[4]  The defense of sovereign immunity is a jurisdictional bar, because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. General Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).  Because sovereign immunity is akin to an affirmative defense, a defendant bears the burden of demonstrating that sovereign immunity exists. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

**Federal Rule of Civil Procedure 12(b)(6)**

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint. It does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual

---

[4] Defendants argue that, pursuant to Rule 12(b)(1), Plaintiff's Title VII and ADEA claims should be dismissed for failure to exhaust.  (ECF No. 18-1 at 6.)  Administrative exhaustion is not a jurisdictional bar. *See Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast"); *Jackson v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022) (noting that although the exhaustion requirement is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt").  Accordingly, administrative remedy exhaustion is analyzed under Rule 12(b)(6).

allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III.   **CONSIDERATION OF EXHIBITS**

Defendants attach four exhibits to their Motion: Exhibit 1 – Affidavit of Bart Plano (ECF No. 18-2); Exhibit 2 – February 14, 2023, Notice of Charge of Discrimination sent to Bart Plano (ECF No. 18-3); Exhibit 3 – Notice of Right to Sue (ECF No. 18-4); and Exhibit 4 – Charge of Discrimination.  (ECF No. 18-5.)

As detailed above, Defendants raise a facial challenge to subject matter jurisdiction. Accordingly, Plaintiff enjoys the procedural protections afforded by a 12(b)(6) motion.  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint.  A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  "An integral document is a document that by its 'very existence, and not the mere information it

contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).  "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment.  *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on the state and federal government websites.").  "In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021) (citing *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)).  Courts also routinely consider EEOC filings and records at this juncture.  *Dyer v. Maryland State Board of Education*, 187 F. Supp. 3d at 608; *Whittington v. N.C. Dep't of Juvenile Justice & Delinquency Prevention*, 2006 WL 909141, at *1 (W.D.N.C. Apr. 7, 2006).

Exhibit 1 is an affidavit of Bart Plano, the Chief Officer of the MTA EEOC office, regarding whether the MTA received Plaintiff's EEOC charge.  Exhibit 2 is an email sent to Plano from the EEOC on February 14, 2023, explaining that Plaintiff filed a charge of employment discrimination against Plano's organization.  While the information contained in Exhibits 1 and 2 pertains to Plaintiff's EEOC charge, neither exhibit is integral to the Complaint; Plaintiff's entitlement to sue does not arise from the very existence of the exhibits.  Accordingly, the court will not consider Exhibits 1 and 2 for purposes of resolving the Motion.  Exhibit 3 is Plaintiff's Notice of Right to Sue letter issued by the EEOC and dated February 12, 2023.  Exhibit 4 is

Plaintiff's EEOC Charge of Discrimination dated November 7, 2022.  Plaintiff references both exhibits in his Complaint; Plaintiff's entitlement to sue arises from the EEOC charge and issuance of the Right to Sue letter; and he makes no authenticity challenge.  Accordingly, the court considers Exhibit 3 through 4 without converting the Motion into one for summary judgment.

IV.   **ANALYSIS**

A.    **12(b)(1) Motion – Sovereign Immunity**

Defendants argue that Plaintiff's claims under the ADEA (Count II) and IIED (Count IV) are barred by sovereign immunity.  (ECF No. 18-1 at 11.)  Specifically, Defendants argue there is no valid abrogation of the State's sovereign immunity as to the ADEA and IIED claims, and the State has not waived sovereign immunity in federal court.  *Id.* at 12-13.  The court agrees.

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. AMEND. XI.  "[U]nder the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents."  *Dixon v. Balt. City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").  "This protection extends to state agencies," including MTA and MDOT.  *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *see Bugg v. Md. Transp. Auth.*, 31 Md. App. 622, 633 (1976) (explaining that "[i]t is beyond question that the Maryland Transportation Authority is an agency of the State and as such enjoys the same sovereign immunity

as does the State . . . ."). "Therefore, absent abrogation of sovereign immunity or consent from Maryland, [Plaintiff] cannot seek injunctive or monetary relief from the MDOT or MTA." *McCray*, 741 F.3d at 483; *see Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 865 (D. Md. 2018) (explaining that "[u]nless a State has consented to the waiver of its immunity under the Eleventh Amendment, or unless its Eleventh Amendment immunity has been abrogated by permissible congressional act to enforce the Fourteenth Amendment, the State may not be sued in federal court by private parties").

In *Kimel v. Fla. Bd. of Regents*, the United States Supreme Court ruled that the "ADEA does not validly abrogate the States' sovereign immunity." 528 U.S. 62, 92 (2000); *see McCray*, 741 F.3d at 483 (noting that "[s]overeign immunity has not been abrogated for ADEA claims"). While the Maryland Tort Claims Act ("MTCA") "provides for limited waiver of the state's sovereign immunity by consenting to be sued in state court under certain conditions," the MTCA "[w]aiver of state sovereign immunity does not implicate the Eleventh Amendment." *Bell v. Univ. of Md. Coll. Park Campus Facilities Mgmt.*, No. CV PX-17-1655, 2018 WL 3008325, at *5 (D. Md. June 14, 2018); *see Carter v. Bowie State Univ.*, No. GJH-20-2725, 2022 WL 717043, at *10 (D. Md. Mar. 9, 2022) (explaining that "the Fourth Circuit has been equally clear—Maryland's waiver of sovereign immunity under the MTCA is not enough to waive immunity guaranteed by the Eleventh Amendment") (citing *Weller v. Dept. of Social Servs. for City of Balt.*, 901 F.2d 387, 397-98 (4th Cir. 1990)).

Because Maryland has not waived its Eleventh Amendment immunity to suit in this court, the court lacks jurisdiction over Plaintiff's ADEA and IIED claims. The Motion will be granted as to Counts II and IV.[5]  *See Carter*, 2022 WL 717043, at *10 (dismissing IIED claim on sovereign

---

[5] The court notes that "[t]he Eleventh Amendment bar to suit is not absolute" and "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law . . . ."  *Lee-Thomas v.*

immunity grounds); *Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 866 (D. Md. 2018) (dismissing ADEA claim on the basis that it is barred by the Eleventh Amendment).

**B.      Rule 12(b)(6) Motion[6]**

**1.      Exhaustion and Timeliness[7]**

Defendants argue that Plaintiff's Title VII claim should be dismissed as untimely and for failure to exhaust administrative remedies.  (ECF No. 18-1 at 6, 14.)

Title VII requires a plaintiff to exhaust administrative remedies prior to bringing suit in court.  *See Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b)) (explaining that "[i]t is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC").  Administrative exhaustion is not a jurisdictional bar.  *See Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast"); *Jackson v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022) (noting that although the exhaustion requirement is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt").  Rather, "Title VII's charge-filing provisions 'speak to . . . a party's procedural obligations.'"  *Fort Bend*, 139 S. Ct. at 1851 (quoting *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 512 (2014)).  An EEOC charge serves two important purposes: (1) "it notifies the charged party of the asserted violation" and (2) "it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance

---

*Prince George's Cnty. Pub. Schools*, 666 F.3d 244, 248 (4th Cir. 2012) (internal citations).  The exception does not apply in the instant case – Plaintiff has neither sued a state official nor sought prospective injunctive relief.

[6] Because the court lacks subject matter jurisdiction over Counts II and IV, the court declines to address Defendants' alternative arguments as to those claims.

[7] As discussed above, administrative exhaustion is not a jurisdictional bar.  *See* n.4, *supra.*

with the law." *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984).

In *Merchant v. Prince George's County, Md.*, the court succinctly explained:

> Before a plaintiff may file suit under Title VII . . ., he is required to file a charge of discrimination with the EEOC." *Jones*, 551 F.3d at 300 (citing 42 U.S.C. § 2000e–5(f)(1)). The statute does not explicitly define the term "charge," *see Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002), but does set forth certain guidance about the exhaustion process. With respect to timing, Title VII establishes "two possible limitation periods for filing a discrimination charge with the EEOC." *Jones*, 551 F.3d at 300 (explaining that the basic limitations period is 180 days after the alleged unlawful employment practice, but can be extended to 300 days in certain circumstances). The timely filing of an administrative charge "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *see also Jones*, 551 F.3d at 300 n. 2.
>
> With respect to form, Title VII mandates that a charge be "in writing under oath or affirmation." 42 U.S.C. § 2000e–5(b); *see also* 29 C.F.R. § 1601.9 (establishing that a Title VII charge "shall be in writing and signed and shall be verified"). EEOC regulations define "verified" to mean "sworn to or affirmed before a notary public, designated representative of the [EEOC] or other person duly authorized by law . . ., or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3. An unverified document that satisfies the other substantive requirements for a charge can be cured by a later-filed charge that is verified, in which case the verified charge relates to the filing date of the unsworn charge. *See* 29 C.F.R. § 1601.12(b); *Edelman*, 535 U.S. at 118, 122 S.Ct. 1145 (upholding relation back). Although EEOC regulations characterize the failure to verify a charge as a "technical defect," 29 C.F.R. § 1601.12(b), the Fourth Circuit has held that compliance with Title VII's verification requirement is "mandatory," *Balazs v. Liebenthal*, 32 F.3d 151, 156 (4th Cir. 1994). In other words, "failure to comply with [the verification requirement] is fatal to an action seeking relief under Title VII." *Id.*
>
> Finally, with respect to substance, Title VII requires that a charge "contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e–5(b). Pertinent EEOC regulations state

> that a charge shall contain the following information: (1) the full
> name, address, and telephone number of the person making the
> charge; (2) the full name and address of the person against whom
> the charge is made; (3) a clear and concise statement of the facts,
> including relevant dates, regarding the alleged unlawful practices;
> (4) if known, the approximate number of employees of the
> respondent; and (5) a statement disclosing whether any proceedings
> regarding the alleged unlawful practices have been commenced
> before a state or local agency. 29 C.F.R. § 1601.12(a).
> Notwithstanding these specific requirements, however, the EEOC
> regulations also contain a catchall clause, which provides that "a
> charge is sufficient when the [EEOC] receives from the person
> making the charge a written statement sufficiently precise to identify
> the parties, and to describe generally the action or practices
> complained of." *Id.* § 1601.12(b). In addition to satisfying the EEOC
> regulations, a filing must also "be reasonably construed as a request
> for the agency to take remedial action to protect the employee's
> rights or otherwise settle a dispute between the employer and the
> employee" before it can be deemed a charge. *Fed. Express Corp. v.
> Holowecki*, 552 U.S. 389, 402, 128 S.Ct. 1147, 170 L.Ed.2d 10
> (2008).

948 F. Supp. 2d 515, 520-21 (D. Md. 2013).

Defendants argue that Plaintiff failed to file a perfected EEOC charge and his failure to

do so requires dismissal of the Title VII claim.  (ECF No. 18-1 at 10.)

At this stage, the court is satisfied that Plaintiff filed a proper EEOC charge as set out in

29 C.F.R. § 1601.12(a).[8]  The charge identifies Plaintiff and his contact information, the name of

his employer he alleges discriminated against him, a statement of facts and dates, and it is signed

and dated November 7, 2022.  (ECR No. 18-5.)   Specifically, the written summary provides:

> I have been discriminated against by my supervisor based on my
> Age, Race, and have been retaliated against by my supervisor for
> making reports and complaints against his conduct. I am a 70 Year
> old African American male my Supervisor is a young Caucasian
> male and my coworkers are also younger males and females. My
> supervisor has routinely screamed at me and only me (July 1, 2021,
> August of 2021, September 2021, October 10, 2021.) On October
> 10, 2021 I filed a complaint with the Office of Equal Opportunity

---

[8] As discussed above, for purposes of analyzing whether Plaintiff exhausted his administrative remedies, the court is limited to Plaintiff's allegations, the EEOC charge, and the Notice of Right to Sue.  *See* Section III, *supra.*

> Compliance Programs for Bullying. Since then my supervisor has continued to harass me, and scream at me. In 2022 I was told I need to complete a training course that only I was told to complete. This training would have disrupted my entire schedule and I am responsible for my Great Grandson during the and made my employer aware that I would need time to make arrangements. I then got written up for failure to show up for assigned training. No one else was written up or assigned this training.

(ECF No. 18-5 at 3.)

Although they allow that "it is true that the Administration is not aware of the exact reason that the EEOC considered the charge to be unperfected," Defendants commend to the court's attention that the EEOC charge was not notarized and Plaintiff did not "declare under penalty of perjury that the statement on the additional sheet of paper was true." (ECF No. 27 at 2.) Defendants cite to Exhibit 4, which provides: "Charges under Title VII . . . must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury)." (ECF No. 18-5 at 3.) On the EEOC charge form, the box at the bottom states: "I declare under penalty of perjury that the above is true and correct." *Id.* at 1. Plaintiff signed and dated in that box. *Id.* Further, in the section titled "THE PARTICULARS ARE," Plaintiff wrote "See Attach." (ECF No. 18-5 at 1.) Indeed, in the section titled "THE PARTICULARS ARE," the EEOC charge form further provides: "If additional paper is needed, attach extra sheet(s)." *Id.* Plaintiff attached a sheet of paper titled "Willie Henderson Summary of Discrimination," signed and dated November 7, 2022. *Id.* at 4. There is no basis to suggest that Plaintiff did not verify his charge because he attached an additional sheet of paper summarizing the alleged discrimination. Plaintiff incorporated the attached summary of discrimination when he filed his EEOC charge. Accordingly, the court declines to dismiss Counts I and III on this basis.

Defendants also argue that Plaintiff's Title VII claims are untimely. (ECF No. 18-1 at 14.) Specifically, Defendants contend that the court may only consider Plaintiff's allegation about the

training in August 2022 and the carbon monoxide incident because the remaining allegations occurred more than 300 days prior to the filing of Plaintiff's EEOC charge.  (ECF No. 27 at 5.)

Pursuant to 42 U.S.C. § 2000e–5(e)(1), a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct.  42 U.S.C. § 2000e–5(e)(1).  "This period is extended to 300 days in a deferral state, one in which 'state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" *Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F. Supp. 2d 658, 662 n.4 (4th Cir. 2007) (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004)).  Maryland is a deferral state; therefore, "plaintiff cannot recover 'for discrete acts of discrimination or retaliation' that occurred outside of the 300-day limitations period."  *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 484 (D. Md. 2016) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)).  "By contrast, hostile work environment claims often arise from repeated conduct that may occur over 'a series of days or perhaps years.'"  *Booth*, 186 F. Supp. 3d at 485 (quoting Morgan, 536 U.S. at 115).  "A court thus may consider a hostile work environment claim 'so long as an act contributing to that hostile work environment takes place' within 300 days of the filing of the charge."  *Id.* (quoting *Morgan*, 536 U.S. at 105).

As an initial matter, it is not entirely clear from the Complaint whether Plaintiff brings a Title VII disparate treatment claim based on race discrimination or only a hostile work environment claim.  In his Response, Plaintiff only addresses hostile work environment.  (ECF No. 23 at 6.)  That notwithstanding, the court addresses disparate treatment and hostile work environment.  As to his disparate treatment claim, Plaintiff alleges incidents that occurred on July 2, 2021 (ECF No. 1 ¶ 8), and October 10,  2021 (ECF No. 1 ¶ 21), but did not file an EEOC charge

until November 7, 2022.[9]  (ECF No. 1 ¶¶ 8-21, 34.)  Many of Plaintiff's allegations, however, do not include dates but appear to be directly related to events that occurred on July 2, 2021, and October 10, 2021.  (ECF No. 1 ¶¶ 9-20, 22-24.)  Plaintiff may not pursue relief for discrete claims arising more than 300 days before November 7, 2022, such as his supervisor yelling at him around July 2021 and October 2021, or forcing him to do tasks outside his normal position.[10]  *Id.* ¶¶ 15, 20, 22-23.

As to his hostile work environment claim, Plaintiff alleges that his supervisor continued to engage in the alleged conduct until he filed an EEOC charge in November 2022.  Because Plaintiff "alleges acts contributing to a hostile work environment that occurred within the limitations period," the court may consider the claim and the allegations of harassment occurring before January 11, 2022.  *See Booth, supra.*

## 2.    Title VII Discrimination (Count I)

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3."  *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326-27 (4th Cir. 2018); *see Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding that "Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination.").  "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, she may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

---

[9] Three hundred days before November 7, 2022, is January 11, 2022.
[10] "However, evidence of events occurring before that date may be admissible to provide context for understanding the import of later actionable conduct."  *Booth*, 186 F. Supp. 3d at 484.

(1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022).

Pursuant to the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing

by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Importantly, however, at the motion to dismiss

stage, "[i]t has long been the rule that 'an employment discrimination plaintiff need not plead a

prima facie case of discrimination under the evidentiary framework set forth in *McDonnell*

*Douglas Corp.*" *Holloway v. Md.*, 32 F.4th 293, 298 (4th Cir. 1973). "Instead, a Title VII plaintiff

is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'"

*Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *McCleary-Evans v. Md.*

*Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).

      "In employment discrimination cases, a plaintiff must plead that (1) her employer took an

adverse employment action against her, (2) because of her protected status." *Brooks v. United*

*Parcel Service Inc.*, No. CV DKC 20-2617, 2021 WL 4339194, at *12 (D. Md. Sept. 23, 2021);

*see McCleary-Evans*, 780 F.3d at 585 (explaining that the plaintiff is "required to allege facts to

satisfy the elements of a cause of action created by that statute"). "[A] complaint must contain

'[f]actual allegations [sufficient] to raise a right to relief above the speculative level.'" *McCleary-*

*Evans*, 780 F.3d at 585 (quoting *Twombly*, 550 U.S. at 555). "To allege that an employer acted

because of an employee's protected status, there must be some connective thread between the

alleged mistreatment and the protected status." *Brooks*, 2021 WL 4339194, at *12 (internal

quotation marks omitted).

      Here, Plaintiff alleges no facts to support a reasonable inference of race bias or

discriminatory animus based on his race. Plaintiff states that he is African American, but alleges

nothing to suggest that any action taken by his supervisor was motivated by, or based on, race.

Further, the Complaint relies on conclusory allegations that Defendants created unequal terms and

conditions during Plaintiff's employment on the basis of Plaintiff's race, and "does not assert facts

establishing plausibility of that allegation." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191

(4th Cir. 2010). Specifically, Plaintiff alleges:

> In or around August 2022, Mr. Henderson was then abruptly and without explanation handed a paper to change his schedule and begin to report to the first shift a few days later.

> Mr. Henderson explained this was not enough notice and he would be unable to adjust his schedule this quickly because he cares for his great grandson, so he missed the initial start day to begin on the first shift.

> When Mr. Henderson moved to the first shift, he became made aware that he was supposed to be getting trained. The trainer did not know he was coming to work the shift.

> Mr. Henderson complained about moving shifts and explained he has already completed the training, however, and he was told "if [he] did not like what was happening [he] could leave."

> On or about August 31, 2022, Mr. Henderson missed work due to carbon monoxide poisoning and he was then "written up" for not showing up for his shift. So, Mr. Henderson went to work. Then, while working, Mr. Henderson passed out.

(ECF No. 1 ¶¶ 25- 29.)

Although Plaintiff alleges these instances were "racial discrimination" (ECF No. 1 ¶ 39),

Plaintiff does not allege facts sufficient to create a plausible inference that Defendants engaged in

this conduct because of his race. Indeed, Plaintiff "fails to allege facts sufficient to create a

plausible inference that he was treated differently from similarly situated co-workers based on his

race." *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016). While Plaintiff alleges that

his supervisor "took actions against h[im] that similarly situated employees of other races [] did

not receive . . . ," *Harris v. Charles E. Smith Life Communities*, No. MJM-21-1242, 2022 WL

4777592, at *6 (D. Md. Oct. 3, 2022), Plaintiff fails to identify a comparator, and the comparator's job titles or responsibilities. *See Haynes v. Waste Connections Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) (explaining that "to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'") (quoting *Haywood v. Locke*, 387 F. App'x. 355, 359 (4th Cir. 2010); *Booth*, 186 F. Supp. 3d at 486 (explaining that "[b]ecause two coworkers treated differently for the same offense might not be similarly situated if they have different job responsibilities or circumstances, a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination"); *see Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (2010) (affirming district court's conclusion that the complaint failed to state a Title VII race discrimination claim where the complaint named a comparator but failed to allege facts suggesting the comparator was similarly situated or "that race was the true basis for [the plaintiff's] termination").

Accordingly, Plaintiff fails to allege the requisite facts to support a claim of disparate treatment discrimination based on race. The Motion will be granted as to Count I.

### 3.    Title VII Hostile Work Environment (Count I)

Plaintiff also alleges that Defendants subjected him to a hostile work environment as part of his Title VII discrimination claim. "To state a hostile work environment claim, a plaintiff must allege offending behavior that was (1) unwelcome, (2) based on race, (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to the employer." *Booth v. Cnty. Executive*, 186 F. Supp. 3d 479, 486 (D. Md. 2016)

(citations omitted).  Defendants argue that Plaintiff's hostile work environment claim fails because he fails to plead facts to suggest that the alleged conduct occurred because of his race.  (ECF No. 18-1 at 18.)  In addition, Defendants argue that Plaintiff fails to set forth allegations on which it could be reasonably concluded that the alleged conduct was severe and pervasive.  *Id.* at 20.

In *Booth*, the court concluded that the plaintiff failed to plausibly allege a hostile work environment claim.  *Id.* at 487.  The *Booth* court explained:

> As with the disparate treatment claim, Booth has failed to allege facts that would suggest that Schacherer's conduct was motivated by racial animus. In fact, the Complaint makes only one explicit reference to race, a statement that Booth is African American. The Complaint repeatedly articulates Booth's belief that Schacherer was harassing him. However, even if Schacherer "disliked [Booth] and made [his] job more stressful as a result, that fact, absent some independent evidence of racial animosity, is not sufficient to establish a prima facie claim" of a racially hostile work environment. *Gilliam*, 474 F.3d at 143.
>
> Moreover, Booth has not alleged facts to support a finding that Schacherer's conduct was sufficiently severe or pervasive to create a hostile work environment actionable under Title VII. A racially hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Boyer–Liberto v. Fontainebleu Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). Among the relevant considerations are whether there was any "physically threatening or humiliating" race-based conduct in the workplace. *Id.* Booth claims that Schacherer shirked his duties as Booth's supervisor and embarrassed Booth in front of his co-workers. But Booth makes no allegations of intimidation or threats. He does not claim that Schacherer used racial epithets or racially derogatory language. See *id.* at 277–78 (finding that a single incident involving an "extremely serious" racial epithet could establish a racially hostile work environment).

186 F. Supp. 3d at 486-87.

In the instant case, as discussed above, Plaintiff's allegations are insufficient to support a conclusion (or suggestion) that Defendants discriminated against him on the basis of his race.  *See*

Section IV.B.2, *supra*.   *See Boyd v. Amazon.com, Inc.*, No. CV SAG-23-00799, 2023 WL 5671598, at *4 (D. Md. Aug. 31, 2023) ("A 'hostile work environment' is not simply an unpleasant one, it must be premised on the plaintiff's membership in a protected class to be actionable."). Moreover, Plaintiff "makes no allegations of intimidation or threats" nor does he "claim that [Defendants] used racial epithets or racially derogatory language." *See Booth, supra.*   Indeed, there are no allegations contained in the Complaint that Plaintiff's supervisor made any statements about Plaintiff's race.   Accordingly, Plaintiff fails to adequately allege a hostile work environment claim.   The Motion will be granted as to Count I to the extent Plaintiff brings a hostile work environment claim.

### 4.      Title VII Retaliation (Count III)

Defendants argue that Plaintiff's retaliation claim fails because Plaintiff fails to allege the requisite elements to state a claim.   (ECF No. 18-1 at 22-26.)   To state a claim for retaliation, Plaintiff must allege that (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal link exists between the protected activity and the adverse employment action. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).

"Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)).   It "includes an employee's opposition to what he or she believes is an unlawful employment practice." *Bowman v. Balt. City Bd. of School Commissioners*, 173 F. Supp 3d 242, 248 (D. Md. 2016).   For example, "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).   While "[c]omplaints about management

activities that would not constitute unlawful discrimination do not count as protected activity," *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 604 (D. Md. 2018), "where the employer understood or should have understood that the plaintiff opposed an unlawful practice, that opposition is protected activity." *Bowman*, 173 F. Supp. 3d at 238 (citing *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012)).

Plaintiff alleges that he complained to individuals about his supervisor's conduct.[11]  (ECF No. 1 ¶¶ 11, 16, 18, 21.)  The Complaint alleges generally that he "reported unlawful, harassing, discriminatory and racist behaviors multiple times to supervisors as outlined above;" the Complaint sets forth the following specific relevant factual allegations:

> When Kent found out Mr. Henderson went to another supervisor, he became angry at Mr. Henderson. Kent then went back to Mr. Henderson and began arguing with him.
>
> Mr. Henderson reported this incident the Mr. Rogers.
>
> When Mr. Henderson returned to the office to get the book for the test, Kent was in the office and told him to "get out" the office, requiring Mr. Henderson to leave without getting the required book.
>
> Mr. Henderson went to the Director, Cynthia Lewis, to complain about Kent's conduct.
>
> Additionally, Kent then began to force Mr. Henderson to start doing duties outside his normal position, specifically, duties assigned to the first shift. Mr. Henderson reported this to his supervisor, as well and reported that he felt targeted against and bullied.
>
> On or about October 10, 2021, Mr. Henderson then filed an EEOC[12] claim because of Kent's behavior and actions towards him.

---

[11] The court notes that the facts involving Plaintiff's retaliation claim overlap substantially with his hostile work environment claim. To the extent Plaintiff maintains that Defendants "engaged in retaliatory harassment resulting in a hostile work environment, the [c]ourt may consider such a claim, including any retaliatory conduct contributing to the hostile work environment, regardless of whether it occurred outside the limitations period." *Booth*, 186 F. Supp. 3d at 485.

[12] As noted above, Plaintiff did not file with the EEOC; he filed with the OEOCP.

(ECF No. 1 ¶¶ 10-11, 15-16, 20-21.)   Construed in the light most favorable to Plaintiff, the allegations do not suggest that Plaintiff opposed an employment practice unlawful under Title VII; nor does Plaintiff allege that he filed a claim with the OEOCP because his supervisor engaged in the alleged actions on the basis of Plaintiff's race.  *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263-64 (4th Cir. 2008) (noting that Title VII bars discrimination based on race, color, religion, sex or national origin and does not protect against mistreatment of whistleblowers or other forms of wrongful discharge).

Moreover, Plaintiff fails to "identify retaliatory conduct that amounts to a materially adverse employment action, which in the context of a retaliation claim is one which 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Booth*, 186 F. Supp. 3d at 488 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006)).  In *Wonasue v. University of Maryland*, the court explained:

> . . . none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee "AWOL"; or issuing a personal improvement plan, an 'Attendance Warning, a verbal reprimand, a formal letter of reprimand, or "a proposed termination.

984 F. Supp. 2d 480, 492 (D. Md. 2013) (citation omitted).

While Plaintiff suggests that he suffered an adverse employment action when Defendants "abruptly and without explanation" changed his schedule, yelled at him, and wrote him up for not showing up to his shift, such actions are generally not considered adverse employment action.  *See Van Story v. Wash. Cnty. Health Dep't*, No. ELH-17-3590, 2019 WL 3340656, at *18 (D. Md. July 25, 2016) (explaining that "[i]n the context of Title VII, the anti-retaliation provision does not protect against petty slights, minor annoyances, and simple lack of good manners"); *see Booth*,

186 F. Supp. 3d at 488 (concluding that delaying supervision sessions, failing to timely sign off on necessary forms, and verbally embarrassing employee in front of co-workers does not constitute a retaliatory adverse employment action under Title VII); *Adams v. Upper Chesapeake Med. Ctr., Inc.*, No. AMD-08-346, 2009 WL 997103, at *4 (D. Md. Apr. 14, 2009) ("[O]ccasional yelling from a boss does not rise to the level of a materially adverse employment action.") (citing *Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 243 (4th Cir. 1997)).  In *Van Story*, the court explained that a "reprimand does not constitute an adverse action unless it causes real harm to [the plaintiff's] employment or is an intermediate step to discharge."  2019 WL 3340656, at *18.

Here, Plaintiff does not allege that any of the actions taken by his supervisor harmed or limited his employment status or workplace opportunities, or led to any other adverse condition or action.  Plaintiff does not allege that because of the alleged actions, he was subsequently discharged, denied leave or a bonus, or placed on a corrective performance plan.  Plaintiff does not allege, nor are there allegations to suggest, that Defendants' actions would have discouraged Plaintiff, or did discourage him, from claiming workplace discrimination.  Indeed, Plaintiff filed an EEOC charge a few months after.  (ECF No. 1 ¶ 34.)  Accordingly, the Motion will be granted as to Count III.[13]

## V.   CONCLUSION

For the reasons set forth herein, the Motion to Dismiss (ECF No. 18) will be granted.

A separate order follows.

---

[13] Defendants additionally argue that Plaintiff's claims against MDOT and the State of Maryland should be dismissed because neither the State nor MDOT were employers of Plaintiff, and Plaintiff provides no basis for vicarious liability. (ECF No. 18-1 at 10-11.)  In response, Plaintiff argues that he alleged that "he was employed by MTA and that vicarious liability exists with the State of Maryland and MDOT."  (ECF No. 23 at 5.)  Even if Plaintiff adequately alleged vicarious liability, the Complaint will be dismissed in its entirety for the reasons stated herein.

/S/
_____
Julie R. Rubin
United States District Judge

March 1, 2024